IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Elijah Battle, Jr., | ) | Case No. 8:11-3462-MGL-JDA |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Warden of Allendale Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 21.] Petitioner, proceeding pro se, is a state prisoner who seeks relief pursuant to Title 28, United States Code, Section 2254. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on December 19, 2011.[1] [Doc. 1.] On March 8, 2012, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 20, 21.] On March 9, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 22.] On April 6, 2012, Petitioner filed a response in opposition. [Doc. 26.]

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on December 19, 2011. [Doc. 1-2 (envelope stamped as received by prison mailroom on December 19, 2011).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is currently incarcerated in the Walden Correctional Institution[2] of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Aiken County. [Doc. 1 at 1; Doc. 30.] In August 2005, Petitioner was indicted for one count of armed robbery, and in November 2005, Petitioner was indicted for possession of a firearm during commission of a violent crime. [Doc. 20-17.] Petitioner proceeded to trial on March 20, 2006, where he was represented by William Sussman ("Sussman"). [App. 60–582.[3]] On March 22, 2006, Petitioner was found guilty of both charges [App. 559–60] and was sentenced to seventeen years imprisonment for the armed robbery charge and five years imprisonment for the possession of a firearm charge, with the sentences to run concurrently [App. 578–79; *see also* Doc. 20-7 at 5, 7 (sentencing sheets)]. Subsequently, Petitioner filed a motion for a new trial, which was denied on July 27, 2006. [Doc. 20-18; *see* Doc. 20-8 at 5.]

---

[2] On July 11, 2012, Petitioner filed a notice of change of address updating his address to Walden Correctional Institution. [Doc. 30.] A prisoner's immediate custodian—the warden of the facility where the prisoner is being held—is the proper respondent in a habeas corpus action because the immediate custodian has the power to produce the prisoner's body before the habeas court. *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). If a prisoner properly files a habeas petition naming the prison warden as the respondent and is relocated to another prison before the court decides whether or not to grant the petition, the court "retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Id.* at 441 (discussing *Ex parte Endo*, 323 U.S. 283 (1944)). Thus, this Court retains jurisdiction over the Petition following Petitioner's transfer from Allendale Correctional Institution to Walden Correctional Institution.

[3] The Appendix can be found at Docket Entry Numbers 20-1 through 20-5 and the Supplemental Appendix at Docket Entry Number 20-6.

**Direct Appeal**

Petitioner timely filed and served a notice of appeal.  [Doc. 20-7 at 1–2.]  On December 10, 2007, LaNelle C. DuRant ("DuRant") of the South Carolina Commission on Indigent Defense filed a brief on Petitioner's behalf; the brief raised two issues:

> 1.  Did the trial court err in allowing the State's testimony that Appellant was choking on something in his mouth immediately after arrest?
>
> 2.  Did the trial court err in allowing [the] State to question Appellant on [the] issue of a witness buying something from him that day implying that it was drugs?

[Doc. 20-8 at 4.]  On June 4, 2008, the South Carolina Court of Appeals affirmed Petitioner's conviction.  [Doc. 20-10.]  Remittitur was issued on June 20, 2008.  [Doc. 20-11.]

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on July 10, 2008.  [App. 19–24.]  Petitioner alleged he was being held in custody unlawfully because of the ineffective assistance of his trial and appellate counsel.  [App. 20.]  As to the facts supporting his grounds for relief, Petitioner stated, "failed to advise me on further representation on appeal.  Douglas v. St. 631 S.E.2d. 542 (2006)."  [App. 21.]

On February 2, 2009, an evidentiary hearing was held concerning Petitioner's PCR application, at which Petitioner was represented by Clarke W. McCants, III ("McCants").  [App. 31–59.]  Petitioner testified at the hearing and clarified his grounds for relief.  [*See id.*]  Prior to the hearing, Sussman and DuRant were deposed, and Petitioner was present at those depositions.  [App. 33–34 (informing PCR court that Petitioner had been present

3

at the depositions); App. 583–612 (deposition of Sussman); Supp. App. 1–10 (deposition

of DuRant).]

On April 2, 2009, the PCR court issued an order of dismissal, denying and

dismissing Petitioner's PCR application with prejudice.  [App. 1–16.]  The PCR court

identified the following as Petitioner's grounds for relief:

> 1.  Ineffective assistance of counsel.
>     a.  During jury polling, one juror responded that he did not agree with the verdict.  Counsel failed to move for a mistrial, and the trial judge sent the jury back for further deliberations.
>     b.  Counsel failed to challenge improper search and seizure.
>     c.  Failure to object to closing [sic] improper bolstering during solicitor's closing arguments.
>
> 2.  Ineffective assistance of appellate counsel.
>     a.  Failure to raise issues of incorrect jury charge and failure to grant directed verdict.
>     b.  Failed to petition for writ of certiorari to the South Carolina Supreme Court.
>     c.  Failure to consult with Applicant.

[App. 2.]  In a detailed discussion of Petitioner's allegations, the applicable law, and the

court's conclusions, the PCR court found neither counsel's performance was deficient and

that Petitioner had failed to demonstrate any prejudice from either counsel's performance.

[App. 4–15.]

McCants filed a timely notice of appeal [Doc. 20-12], and on January 21, 2010, he

filed a petition for writ of certiorari in the South Carolina Supreme Court on Petitioner's

behalf [Doc. 20-13.]  The petition asserted the following as the questions presented:

> I.  Was trial counsel ineffective for failing to object to certain statements made [by] the Solicitor in his closing argument?

II.     Was trial counsel ineffective for failing to move for a mistrial after the jury was polled two times following the rendering of the verdict?

III.    Was Petitioner's appellate counsel ineffective for failing to file a Petition for a Writ of Certiorari following the issuance of the Court of Appeals Decision?

[*Id.* at 2.]  On October 5, 2011, the Supreme Court denied the petition.  [Doc. 20-15.]

Remittitur was issued on October 21, 2011.  [Doc. 20-16.]

**Habeas Petition**

Petitioner filed this Petition for writ of habeas corpus on December 19, 2011 pursuant to 28 U.S.C. § 2254.  [Doc. 1.]  Petitioner raises the following grounds for relief, quoted substantially verbatim:

**Ground One**:  Trial Counsel Was Ineffective In Failing To Object To Certain To Statements Made By The Solicitor During His Closing Argument.

*Supporting Facts*:  Petitioner contends that the Solicitor made impermissible comments during his closing statements, without objection of trial counsel, and that trial counsel was ineffective by not objecting to such statements.

Specifically, and beginning at page 444 Ln. 13-17 of the transcript for the trial for this matter, Aiken County Assistant Solicitor, Bill Weeks, stated:

"Well, I'm not going to talk longer than it took the defendant to testify because the defendant is an armed robber and is guilty of armed robbery.  Blake Valentine an arm robber?  Maybe so. Is Damian Battle an armed robber?  Maybe so.  (Tr. p. 444 Ln 13-17)

"You know, some things, and the judge, I noticed when he was given y'all his opening statements he talked about common sense and credibility and some things, it's just obvious people don't have any reason to lie about (Tr. pg. 445 Ln 19-22)

"These folks just told the truth."  (Tr. pg. 446 Ln 1)

"They watched him for about four, five, six minutes, however long the robbery lasted, described him as having the dark colored clothing, which is truthful." (Tr. pg. 446 Ln. 14-16)

"The most amazing thing – one of the most amazing things about this case is this is out in the country folks. I live out there." (Tr pg. 448 Ln 10-12)

"He managed to throw them into Elijah Battle's sock."(pg 449 Ln 8-9)

"Now do we -- did we know that night that we need to take a picture of Elijah Battle with stuff up his sock or is it reasonable for the police officer to say think that you would believe them when they took this ladies identification out of his sock.(Tr.pg. 449 Ln 9-13)

"Is it reasonable that we want our deputies to be believed when they tell us stuff like that? This is an Aiken County jury. I hope you do, because that's what they told you, that's what they did. (Tr.pg. 449 Ln 14-17)

**Ground Two**: Trial Counsel Was Ineffective For Failing To Move For A Mistrial After A Juror Refused To Affirm His Verdict At The Conclusion Of The Case.

*Supporting Facts*: The trial counsel failed to move for a mistrial after a juror refused to affirm his verdict at the conclusion of the case. The record for this matter reflects that the jury initially returned guilty verdicts against the Petitioner on both charges. Upon delivery of the verdict, counsel for the Petitioner requested that the jury be polled.

During that period of polling, Juror 126 stated the following in response to questioning:

"Juror 126, [name omitted]. Is this still your verdict?

[Juror 126]: Yes.

The Clerk: Do you still agree with this verdict?

[Juror 126]: No." (Tr. pg. 493 Ln 16-21)

Upon the conclusion of polling, the trial judge conferred with counsel for the State and counsel for the Petitioner, and expressed that a

situation like this had never been presented before him.  After a very brief discussion with counsel, the Judge determined that the jury should return to the jury room and continue deliberation.

**Ground Three**:    Appellate Counsel Was Ineffective For Failing To File A Petition For A Writ Of Certiorari Following Issuance Of Court Of Appeals Decision.

*Supporting Facts*:    Appellate cou[n]sel failed to file a petition of writ of certiorari following the issuance of the Court Appeals decision in the case.  Petitioner testified at his PCR hearing that appellate counsel did not advise me of my rights to file a Petition for Writ of Certiorari to the Supreme Court for further review.  Appellate counsel presented two issues for review by the Court of Appeals.

Issues reviewed by the Court of Appeals:

(1) That the trial Judge erred in allowing law enforcement officers to testify that the Petitioner had tinfo[i]l in his mouth at the time of his arrest and . . .

(2) That the trial court erred in allowing a witness to testify that he had "purchased something" from the Petitioner on the day of his arrest, and implying that the Petitioner sold drugs to the witness.

The Court of Appeals denied the appeal and dismissed the case.  Petitioner further testified that despite his request to file the Writ, appellate counsel failed to file any further petitions on his behalf.

**Ground Four**:    Trial counsel was ineffective by not objecting to certain search and seizure upon apprehension following the alleged incident.

*Supporting Facts*:    The Petitioner was apprehended by the Aiken County Sheriff's Department approximately fifteen minutes after the alleged incident and he was a passenger in a vehicle driven by a friend.  Petitioner initially alleged that trial counsel failed to move to suppress his apprehension, search and seizure.  He contended that insufficient cause existed for the Sheriff's Depart to stop the vehicle in which he was a passenger and to otherwise seize his person.

The Petitioner raised several constitutional objections to this search and seizure.  Trial lawyer did not follow up on connecting the vehicle, in which Petitioner was a passenger in fitting the description of the vehicle that suppose[d]ly been at the crime.

[*Id.*]  As previously stated, on March 8, 2012, Respondent filed a motion for summary judgment.  [Doc. 21.]  On April 6, 2012, Petitioner filed a response in opposition.  [Doc. 26.]  Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the petitioner's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)   (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)   (i) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may

consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[4] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir.

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.  *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) ("[South Carolina] has identified the petition for discretionary review to [the South Carolina Supreme Court] in criminal and post-conviction cases as outside South Carolina's standard review process.  In [the South Carolina Supreme Court's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However,

if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Murray*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To pass through this actual innocence standard, the petitioner's case must be truly extraordinary. *Murray*, 477 U.S. at 496.

## DISCUSSION

**Procedurally Barred Grounds**

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996). If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Here, Respondent argues parts of Ground One are procedurally barred because the PCR court addressed some but not all of the allegedly objectionable statements raised to this Court and Petitioner is now unable to return to the state courts to present the unaddressed statements for collateral review. [Doc. 20 at 24.] Respondent also argues Ground Four is procedurally barred because Petitioner failed to raise that claim

to the South Carolina Supreme Court and is unable to return to state court to seek review of that claim by the South Carolina Supreme Court. [*Id.* at 25.] The Court agrees.

Parts of Ground One and Ground Four are procedurally barred because Petitioner failed to properly raise these grounds for relief to the state courts. Parts of Ground One were raised to and ruled upon by the PCR court, and subsequently properly raised to the South Carolina Supreme Court, but not all of the allegations in Ground One were raised to and ruled upon by the PCR court.[5] [*Compare* App. 7–9 (PCR court's decision with respect to Sussman's alleged failure to object to the solicitor's closing argument), *with* Doc. 1 at 5, 15 (failure to object to closing argument claim as raised to this Court).] Ground Four was raised to and ruled upon by the PCR court [App. 5–7] but was not presented to the South Carolina Supreme Court in Petitioner's petition for writ of certiorari [*see* Doc. 20-13]. Because parts of Ground One were not fairly presented to the PCR court and the South Carolina Supreme Court and Ground Four was not fairly presented to the South Carolina

---

[5] Specifically, the following statements that Petitioner has included as part of the allegations forming Ground One raised to this Court were not raised to the PCR court:

> "Well, I'm not going to talk longer than it took the defendant to testify because the defendant is an armed robber and is guilty of armed robbery. Blake Valentine an arm robber? Maybe so. Is Damian Battle an armed robber? Maybe so. (Tr. p. 444 Ln 13-17)
>
> "He managed to throw them into Elijah Battle's sock."(pg 449 Ln 8-9)
>
> "Now do we -- did we know that night that we need to take a picture of Elijah Battle with stuff up his sock or is it reasonable for the police officer to say think that you would believe them when they took this ladies identification out of his sock.(Tr.pg. 449 Ln 9-13)
>
> "Is it reasonable that we want our deputies to be believe when they tell us stuff like that? This is an Aiken County jury. I hope you do, because that's what they told you, that's what they did. (Tr.pg. 449 Ln 14-17)

[Doc. 1 at 15.] The PCR court specifically stated the only closing arguments Petitioner challenged through the PCR proceedings were those arguments noted in the PCR court's decision. [App. 8 n.2.]

Supreme Court, they are procedurally barred from federal habeas review absent a showing of cause and actual prejudice. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. In this case, Petitioner has failed to articulate cause for procedurally defaulting parts of Ground One and Ground Four. Petitioner contends the PCR court considered all of the statements presented in Ground One, as evidenced by the proposed order prepared by McCants. [Doc. 26 at 11; *see* Doc. 26-2 (the proposed order).] However, the PCR court only addressed four of the eight statements Petitioner presents to this Court in Ground One [App. 7], and Petitioner failed to file a Rule 59(e) motion to alter/amend the judgment for the PCR court to address all of the allegedly objectionable statements, *see* S.C. R. Civ. P. 59(e); *Marlar*, 653 S.E.2d 266. Further, Petitioner contends Ground Four was presented to the South Carolina Supreme Court. [Doc. 26 at 11–12.] However, while the petition for writ of certiorari did mention that Petitioner raised to the PCR court a claim based on trial counsel's failure to object to Petitioner's search and seizure, the petition did not raise those allegations to the South Carolina Supreme Court as a basis for the court to grant a writ of certiorari. [Doc. 20-13.] Thus, Petitioner filed a PCR application and petition for writ of certiorari in which all of Ground One and Ground Four could have been properly raised but were not, even

19

though other issues were properly raised.  Therefore, Petitioner has failed to demonstrate sufficient cause for failing to raise all of Ground One and Ground Four to the PCR court and the South Carolina Supreme Court, and these claims are barred from federal habeas review.

**Merits of Remaining Grounds**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2).  The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what

arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[6] *Richter*, 131 S. Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial

_____

[6] In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

### *Ground One*

In Ground One, Petitioner argues his trial counsel, Sussman, rendered ineffective assistance because Sussman failed to object to certain statements in the solicitor's closing argument. [Doc. 1 at 5, 15.] As explained above, Petitioner procedurally defaulted Ground One with respect to certain allegedly objectionable statements. Ground One was not procedurally defaulted as to the following statements:

> "You know, some things, and the judge, I noticed when he was given y'all his opening statements he talked about common sense and credibility and some things, it's just obvious people don't have any reason to lie about (Tr. pg. 445 Ln 19-22)

> "These folks just told the truth." (Tr. pg. 446 Ln 1)

> "They watched him for about four, five, six minutes, however long the robbery lasted, described him as having the dark colored clothing, which is truthful." (Tr. pg. 446 Ln. 14-16)

> "The most amazing thing – one of the most amazing things about this case is this is out in the country folks. I live out there." (Tr pg. 448 Ln 10-12)

[*Id.* at 15.] However, the Court concludes Petitioner is not entitled to federal habeas corpus relief based on the allegations raised in Ground One that were not procedurally defaulted.

The PCR court held an evidentiary hearing, made findings as to the credibility of the witnesses, and outlined a factual basis for declining to find Sussman's representation fell below the *Strickland* and applicable state law standards. [App. 2–9 (PCR's findings of fact, conclusions of law, and analysis regarding ineffective assistance claims with respect to Sussman), 31–59 (evidentiary hearing), 583–612 (Sussman deposition).] In pertinent part, the PCR court found,

> Counsel testified that the theory of the case was that another party had committed the robbery. In closing, counsel for Applicant had argued that other parties could be responsible for the robbery (i.e. Weber, "Punchy," or Valentine). Counsel pointed out that the description of the suspect was somewhat generic- tall, black, slender, dark clothing. He pointed out that the Moseleys had not identified the bandana in evidence as the bandana worn by the perpetrator or the gun. Counsel also noted that the clothing, an important part of the description, was not even in evidence even though the Applicant's shoe was in evidence. Counsel further pointed out for the jury questions about the investigation.
> Considering all these aspects, I find that counsel was not ineffective in failing to object to these comments during the solicitor's closing arguments. Statements 1 and 2[7] contain

---

[7] The PCR court identified the following statements as Statements 1 and 2:

1.     p. 445, line 19 – p. 446, line 3: "You know, some things, and the judge, I noticed when he was giving y'all his opening statements he talked about credibility and some things, it's just obvious some people don't have any reason to lie about. It don't matter whether it's a white guy or black guy with a sawed off shotgun to your head, so you don't have any reason to pin it on the white guy. These folks just told the truth. They could tell by his voice and by his coloration around his eyes that he was a black guy."

permissible comments upon the evidence and reply to arguments of the defense. Statement 3[8] is not improper vouching for any witness.

I further find that Applicant has failed to demonstrate prejudice in this regard. There was strong evidence of guilt in this case. The trial judge charged the jury on credibility of witnesses (including that police officer's testimony should not be given more credence just because he is a police officer). The trial judge also instructed the jury:

> In reaching your verdict, you may consider only the testimony and the exhibits received into evidence. Certain things are not evidence and you must not consider them in determining what the facts are in this case. I will list some of the them for you. As I indicated to you earlier, the arguments and statements of the lawyers are not evidence. What they have said in their opening statements and in their closing arguments and at other times is intended to help you interpret the evidence but it is not itself evidence.

Under these circumstances, I find that, even if objections to the remarks had been made, that Applicant has failed to demonstrate prejudice such that the outcome of the trial would have been different.

[App. 8–9 (citation omitted).]

---

2.    p. 446, lines 14-20: "They watched him for about four, five, six minutes, however long the robbery lasted, described him as having the dark colored clothing, which is truthful. If they came in here and said that he had a jacket on and some other sort of other fru fru kind of britches, then that would just be too much detail, folks. It wouldn't be the truth. They couldn't see it.

[App. 7.]

[8] The PCR court identified the following statement as Statement 3:

3.    p. 448, lines 10-14: "The most amazing thing – one of the most amazing things about this case is this is out in the country folks. I live out there. I call it country, it's out a ways. There were more police officers on the scene so fast in this case it just amazes me to this day."

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. For example, Sussman stated the following in his closing argument:

> Now, a couple of questions I want to raise and then I'll sit down. . . . [Petitioner] admitted that this bandana was his. He said, yeah, this is my bandana. But did you ever hear any of the Moseleys say this is the bandana the guy was wearing if they had such a clear view of his clothing? I didn't hear anything. For that matter, did you hear anybody -- did you hear the Moseleys identify the gun? Did they say that's it? That's a pretty distinctive looking gun. It doesn't look like it's been used in a while. I'm not sure I'd fire it myself. But they never identified this as the gun.
>
> Isn't that kind of critical? Does that not raise some questions? That they had such a good look at the bandana that they could identify the clothing? Why didn't they identify the gun that was held right to their face, which was probably the main thing that they were looking at? Didn't Mr. Moseley say it was a double-barrel shotgun?
>
> Now, y'all have better memories than me, but that's just some questions that remained unanswered. And everything that's been made about the clothing, where is the clothing? You know, I've been looking for it, I can't find it. Why, since the clothing seems to be one of the main identifiers of [Petitioner], where is the clothing? They've got the shoe . . . . Where is the clothing, this dark clothing that everyone is talking

about?  Why isn't that here?  Why isn't there a photograph of it?  We've got photographs of the shoe.  We got photographs of sort of an imprint . . . .  Where is the photograph of the clothing?  Or why couldn't they have brought the clothing in here?  Isn't he entitled to that?  Aren't you entitled to have that to see if it's consistent?  So that there's no question raised in your mind?

[App. 499–500.]  Thus, in his closing argument, Sussman had raised questions regarding the testimony and evidence, or lack thereof, identifying the gun allegedly used in the robbery and the clothing worn by the robber, and the solicitor's closing argument with respect to this evidence was a follow-up to Sussman's argument.  Moreover, the trial court emphasized the attorneys' closing statements were not evidence or testimony:

> The only evidence in the case is the demeanor from the witness stand and the exhibits that have been introduced.
>
> \*\*\*
>
> In reaching your verdict, you may consider only the testimony and the exhibits received into evidence.  Certain things are not evidence and you must not consider them in determining what the facts are in this case.  I will list some of them for you.  As I indicated to you earlier, the arguments and statements by the lawyers are not evidence.  What they have said in their opening statements and their closing arguments and at other times is intended to help you interpret the evidence, but it is not itself evidence.

[App. 518, 524.]  Therefore, the Court finds the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on the undefaulted portions of Ground One.

### Ground Two

In Ground Two, Petitioner argues Sussman was ineffective for failing to move for a mistrial after one juror refused to affirm his verdict when the jury was polled.  [Doc. 1 at

6–7, 16.]  The Court concludes Petitioner is not entitled to federal habeas corpus relief based on the allegations raised in Ground Two.

As previously stated, the PCR court outlined a factual basis, based on the evidentiary hearing held before the court and Sussman's deposition, for declining to find Sussman's representation fell below the applicable standards.  With respect to Ground Two, the PCR court found,

> Applicant asserts that counsel should have moved for a mistrial when the polling of the jury revealed that one juror did not still agree with his verdict.  Trial counsel testified that the situation was indeed unusual, and he did not recall whether he considered moving for a mistrial.  He was unsure whether the situation was different than a situation where a jury comes out and informs the court they are deadlocked, prompting the court to give an Allen charge.
>
> Even so, I do not find that counsel's failure to move for a mistrial when the jury was polled constitutes deficient performance.  Even if counsel were deficient, Applicant has failed to demonstrate prejudice therefrom.  The grant or refusal of a mistrial is within the discretion of the trial court, and a mistrial should only be granted when absolutely necessary. State v. Kelly, 372 S.C. 167, 641 S.E.2d 468 (Ct. App. 2007). In State v. Kelly, during polling a juror stated that she was not in agreement with the verdicts, and the trial judge sent the jury back for further deliberation.  Citing State v. Roper, 274 S.C. 14, 260 S.E.2d 705 (1979) and State v. Singleton, 319 S.C. 312, 460 S.E.2d 573 (1995), the State v. Kelly court determined that the trial jduge took the appropriate action in sending the jury back for deliberation to reach a unanimous verdict and that ordering a mistrial or giving an Allen charge would not have been appropriate.  Pursuant to these authorities, I find no deficient performance by trial counsel and no prejudice from counsel's failure to move for a mistrial.

[App. 4–5.]

Upon review, the Court determines the PCR court's denial of this ineffective assistance claim was neither contrary to nor an unreasonable application of applicable

Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. For example, the record indicates the attorneys participating in the trial and the trial judge had never been confronted with a situation where, upon polling after the verdict was published, one of the jurors indicated he did not still agree with the verdict. [App. 556.] In determining how to handle the situation, the following colloquy took place between the trial judge, the prosecution, and defense counsel, outside the presence of the jury:

> THE COURT: To be very candid with everyone, in 19 years I've never seen that. Have any of you experienced that?
>
> MR. WEEKS: I have not, Your Honor.
>
> MS. MORGAN: I have not, Your Honor.
>
> MR. SUSSMAN: I haven't[.]
>
> THE COURT: Well, obviously, there has to be a unanimous verdict and I don't know -- apparently, I can instruct them that there has to be a unanimous verdict and if there's not a unanimous verdict then they either need to continue to deliberate or to inform the Court that they are unable. I don't know of any other thing to do, other than to inform them that there has to be [a] unanimous verdict and then if they then send out information to the Court that they are unable to reach a unanimous verdict, then declare a mistrial.

> MR. WEEKS:        Your Honor, the State's position on that is -- is to tell them that -- my position ---
>
> THE COURT:        I wouldn't tell them about the mistrial.  I would simply at this point tell them that this has to be a unanimous decision and, therefore, they are to continue their deliberations.
>
> MR. WEEKS:        That's our position, Judge.
>
> THE COURT:        All right.
>
> MR. SUSSMAN:     I would agree with that.

[App. 556–57.]  After further deliberations, the jury returned the same verdict of guilty on both charges,[9] and upon polling, each juror affirmed the verdict and stated he or she still agreed with the verdict.  [App. 559–64.]  The PCR court determined Sussman's failure to move for a mistrial after the first polling of the jury did not constitute deficient performance, and nothing in the trial record indicates the PCR court overlooked some aspect that could arguably constitute deficient performance.   Therefore, the Court finds the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on Ground Two.

### *Ground Three*

In Ground Three, Petitioner argues his appellate counsel, DuRant, rendered ineffective assistance because DuRant failed to file a petition for writ of certiorari following the South Carolina Court of Appeals' decision.  [Doc. 1 at 8, 17.]  The Court concludes Petitioner is not entitled to federal habeas corpus relief based on the allegations raised in Ground Three.

---

[9] The original jury verdict was guilty on both charges.  [App. 551.]

As it did with respect to Sussman's representation, the PCR court outlined a factual basis, based on the evidentiary hearing held before the court and DuRant's deposition, for declining to find DuRant's representation fell below the *Strickland* and applicable state law standards.  [App. 10–15.]  In pertinent part, the PCR court found,

> Applicant asserts that appellate counsel's failure to petition the South Carolina Supreme Court for writ of certiorari constitutes ineffective assistance of appellate counsel.  Appellate counsel testified that she first reviewed the record and case law to determine if there were any issues strong enough to merit an appeal.  Appellate counsel testified that she did not believe the issues warranted a petition for rehearing or petition for writ of certiorari.  I do not find that counsel's performance was deficient in this regard.  Our courts have declined to "impose a duty on appellate counsel to pursue rehearing and/or certiorari following the decision of the Court of Appeals in a criminal direct appeal." Douglas v. State, 369 S.C. 213, 215, 631 S.E.2d 542, 543 (2006).  I find that appellate counsel determined in her professional discretion, from a review of the record and case law, that a petition for writ of certiorari was not warranted.  I further find that Applicant has presented no evidence of prejudice in this regard.

[App. 14.]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. For example, during her deposition, DuRant testified as follows:

> A.     I did not go any further. I did not feel that the issues that we had, the evidence, appellant issues warranted petition for rehearing or [for writ of certiorari].
>
> Q.     Okay. And how do you go about evaluating that?
>
> A.     Well, you just have to look at the law, you have to look at the objections the attorney raised. I mean, initially you look at those to determine any appeal issues. And based on the case law, if you think that the evidence you have is strong enough to warrant an appeal.
>
> Q.     And you reviewed the record in this case and made that determination not to continue?
>
> A.     Correct.
>
> ***
>
> Q.     . . . And again, why was [a petition for a writ of certiorari not filed]?
>
> A.     Well, I just didn't feel that the case warranted it. I just didn't feel the issues were strong enough to go forward with that.

[Supp. App. 3–4, 7–8.] As the PCR court determined, DuRant's testimony establishes she reviewed the issues in Petitioner's case and concluded a petition for writ of certiorari to the South Carolina Supreme Court was not warranted. Nothing in her testimony indicates the PCR court overlooked that DuRant's performance was somehow deficient with respect to her decision not to file a petition. Therefore, the Court finds the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on Ground Three.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

August 6, 2012
Greenville, South Carolina